# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs August 7, 2012

## NICHOLAS FLETCHER v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. 05-08627      W. Mark Ward, Judge**

---

**No. W2011-01732-CCA-R3-PC  - Filed October 19, 2012**

---

Petitioner, Nicholas Fletcher, appeals from the post-conviction court's dismissal of his petition for post-conviction relief following an evidentiary hearing.  In this appeal, Petitioner argues that his trial counsel rendered ineffective assistance of counsel because trial counsel: (1) failed to investigate concerning certain witnesses at his trial; (2) failed to present Petitioner's testimony at the pre-trial hearing on the motion to suppress Petitioner's inculpatory statement to police; and (3) failed to adequately explain to Petitioner the State's negotiated plea agreement offer.  After a thorough review of the record and the briefs of the parties, we affirm the judgment of the post-conviction trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROGER A. PAGE, JJ., joined.

Zipporah C. Williams, Memphis, Tennessee, for the appellant, Nicholas Fletcher.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; and Amy P. Weirich, District Attorney General; and Robert Ratton, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Background

Following a jury trial in Shelby County, Petitioner was found guilty of felony murder, attempted especially aggravated robbery, and aggravated assault.  He received an effective sentence of life imprisonment.  The State's proof at trial was that Petitioner and others

planned to rob a convenience store. During the attempted robbery, a store clerk was shot and killed by one of the perpetrators. Petitioner gave a statement to police. In this statement Petitioner admitted that he and two other individuals planned the robbery of the convenience store. One of the other individuals was supposed to put a gun to the employee's head while Petitioner and the third individual removed the money from the cash register. Petitioner went to the store with the other two individuals and a fourth person who walked past the store and did not enter it. According to Petitioner's statement, the accomplice with the gun ran inside the convenience store, ran to the clerk, shoved the clerk, and then put the gun to the clerk's head. As Petitioner and the third perpetrator "came into the door," Petitioner heard a gunshot. Petitioner stated to the police that they then ran away.

The owner of the convenience store was a brother to the clerk who was killed. The owner testified that when he stepped outside his store for a minute, two men approached him with the lower half of their faces covered with a cloth. They pushed the owner back into the store and held a gun to his head. The murder victim came from the back of the store. The perpetrator with the gun fired two shots, one of which struck the murder victim in the chest and perforated his heart. This Court affirmed the convictions on appeal. *State v. Nicholas Fletcher*, No. W2007-02118-CCA-R3-CD, 2009 WL 1819252 (Tenn. Crim. App. June 25, 2009) *no perm. app. filed*.

## Post-Conviction Proceedings

Relevant to the specific issues presented on appeal by Petitioner, we will set forth a summary of the testimony presented by the Petitioner and trial counsel, the only two witnesses who testified at the post-conviction hearing.

First, Petitioner argues on appeal that trial counsel was ineffective because he failed to interview and present the testimony of two witnesses, Deaundre Jones and Anishun Cole, who would have provided an "alibi" defense for Petitioner. Petitioner testified at the hearing that these witnesses would have testified that Petitioner "didn't have anything to do with" the robbery. Petitioner also testified at the hearing that he never told trial counsel about these two witnesses and did not give trial counsel their names and/or contact information. Petitioner admitted that the proposed witnesses were not in court for the post-conviction hearing and that he could not "get in contact with them right now."

As to the second issue, that trial counsel provided ineffective assistance of counsel by not calling Petitioner to the witness stand during the pre-trial suppression motion hearing, Petitioner testified at the post-conviction hearing that he was 17 years old when he was arrested. His mother was permitted to be in the room during the police interrogation of Petitioner. Generally, Petitioner, in his post-conviction hearing testimony, alluded to the fact

he wanted to testify that his statement to police was coerced, that he was intoxicated, and that he had "a lack of understanding." Specifically, the following transpired during Petitioner's direct examination during the post-conviction hearing:

Q:          Did you feel like you were going to get some sort of reward or did you feel pressured to confess?

[PETITIONER]:    I felt - - I felt real pressured cause I was telling them I don't - - I don't know. I don't know. That's what I was stating the whole time I was in there.

\* \* \*

Q.          All right. Before your Motion to Suppress hearing, did you tell [trial counsel] that you wanted to testify?

[PETITIONER]:    Yes, ma'am.

Q.          Okay. So you expressed to him that you wanted to testify at your hearing. Okay. What happened when you told him that?

[PETITIONER]:    [Trial counsel] stated it wouldn't be a good idea for me to testify.

Q.          What would you have testified to at your suppression hearing?

[PETITIONER]:    Just let them know I felt real pressure when I gave the statement, and I just feel like - - I just gave them what they wanted to hear.

\* \* \*

Q.          Okay. Another issue that you state in your petition is that [trial counsel] failed to submit evidence of your intoxication at the time of the statement?

[PETITIONER]:    Yes, ma'am.

Q.          Explain what intoxication were you referring to?

[PETITIONER]:    I can't think of the name of the drug. They call them X pills and weed. I was smoking marijuana.

Q.          How long before you were arrested did you ingest those drugs?

[PETITIONER]:    I had just popped - - I think popped two pills. I took two pills right when the police was at my momma's house.

Q.          Let me ask you this. Did you ever talk to [trial counsel] about that? Did you tell him about what happened with the drugs before you were arrested?

[PETITIONER]:    Yes, ma'am.

Q.          Okay. What happened when you told him about that?

[PETITIONER]:    We couldn't produce no evidence that I was intoxicated, so it wouldn't be no issue.

Finally, as to Petitioner's argument that trial counsel failed to adequately explain the State's negotiated plea offer of 20 years upon a plea of guilty to second degree murder, Petitioner testified that he did not know he could get a life sentence for first degree murder, and he believed that 25 years was the maximum sentence he could receive if he went to trial and was convicted as charged of felony murder.

On cross-examination, Petitioner clarified that he and trial counsel agreed that there was no evidence which would corroborate that Petitioner was intoxicated when he gave the statement to police. Upon questioning by the post-conviction court, Petitioner admitted that trial counsel presented him with the State's offer to settle the case with a sentence of 20 years. However, Petitioner claimed that he did not understand the 20-year offer, and he did not ask trial counsel anything about the offer except "[H]ow much time would I do[?]" for a sentence of 20 years.

Trial counsel was called to testify by the State. He could not recall the name of one potential alibi witness identified by Petitioner, but trial counsel stated the witness's testimony would have been inconsistent with the defense theory of the case. Trial counsel testified that

he told Petitioner that Petitioner's proposed testimony at the suppression hearing would not add to the testimony of other witnesses and that if Petitioner testified he would be subject to cross-examination. Thus, in trial counsel's opinion, Petitioner should not testify "given the risk." Petitioner's mother and father both testified at the suppression hearing. As to communication of the ramifications of the negotiated plea offer, trial counsel testified that he told Petitioner he could receive a life sentence if convicted of felony murder, that this would result in a minimum incarceration of over 50 years, that the 20-year offer was a "100 percent offense" but he might get released with "good time" after service of about 17.5 years. Trial counsel arranged for Petitioner's family to discuss the plea offer with his entire family in a "cleared out" courtroom before the trial began. Petitioner made the decision to proceed to trial.

In its order denying post-conviction relief, the post-conviction trial court made the following findings as to the three issues raised by Petitioner in his appeal.

### (1) Failure to investigate and produce additional witnesses.

Both the *pro se* and the Amended Petition allege that trial counsel failed to investigate and present additional witnesses. At the evidentiary hearing, Petitioner testified that his attorney failed to produce two witnesses at trial: [Deaundre] Jones and Anshun Cole who would have testified that he did not have anything to do with the robbery. However, he further testified that he never told his attorney about these witnesses. Trial counsel cannot be faulted since Petitioner never advised of the identity of the witnesses. Accordingly, he has not shown "deficient performance." In addition, neither Mr. Jones nor Mr. Cole testified during the post-conviction evidentiary hearing. Accordingly, Petitioner cannot demonstrate "prejudice." See also *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990) ("[W]hen a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing" in order to show prejudice).

### (2) Failure to call Petitioner as a witness during the suppression hearing; and to present evidence of misunderstanding and intoxication.

The *pro se* Petition specifically alleges that trial counsel should have called the Petitioner as a witness in the suppression hearing. At the evidentiary hearing, Petitioner testified that his attorney advised him not to testify at the suppression hearing. Trial counsel testified that he discussed

the possibility of the Petitioner testifying in the suppression hearing with the Petitioner, but he did not think it wise as Petitioner would have been subject to cross-examination by the state and he felt he could establish grounds to suppress the statement with the testimony of Petitioner's parents. This court finds that this is a matter of trial strategy and should not be second-guessed. Accordingly, Petitioner has failed to establish "deficient performance." Furthermore, as far as the substance of his proposed testimony Petitioner would have testified merely that he "felt real pressure and I just gave them what he wanted to hear." This testimony falls way short of showing a coerced confession. As far as his intoxication, he would have testified that he had taken some "ex" pills and had smoked some "weed" just prior to the police arresting him. However, he offered no testimony as to the "degree" or "extent" of his so-called intoxication. He would have also testified as to his limited educational background, but this proof was supplied by his parents. This court has reviewed this proposed testimony by the Petitioner and finds that its inclusion would not have altered the outcome of the suppression hearing. Accordingly, Petitioner has failed to establish "prejudice."

**(3) Failure to explain state's offer of settlement.**

Both the *pro se* and the Amended Petition allege that trial counsel did not properly inform the Petitioner of the offer of settlement proposed by the prosecution. At the evidentiary hearing, Petitioner testified that although he received an offer of settlement from the State where he could have accepted a sentence of 20 years, he turned that offer down because he did not know he could get a life sentence on the case and thought he would receive 25 years even if found guilty. Trial counsel testified that he fully explained the possible punishments for first degree murder including life imprisonment. This Court resolved this conflicting testimony against the Petitioner and finds Petitioner's credibility on this issue to be suspect. Specifically, this Court finds that Petitioner was well aware that if he went to trial he could receive a life sentence.

**Analysis**

To sustain a petition for post-conviction relief, a petitioner must prove his or her factual allegations by clear and convincing evidence at an evidentiary hearing. *See* Tenn. Code Ann. § 40-30-110(f) (2003); *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999). Upon review, this Court will not reweigh or re-evaluate the evidence below; all questions

-6-

concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the post-conviction judge, not the appellate courts. *See Momon*, 18 S.W.3d at 156; *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997). The post-conviction judge's findings of fact on a petition for post-conviction relief are afforded the weight of a jury verdict and are conclusive on appeal unless the evidence preponderates against those findings. *See Momon*, 18 S.W.3d at 156; *Henley*, 960 S.W.2d at 578.

The Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution guarantee a criminal accused the right to representation by counsel. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Both the United States Supreme Court and the Tennessee Supreme Court have recognized that the right to such representation includes the right to "reasonably effective" assistance, that is, within the range of competence demanded of attorneys in criminal cases. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Burns*, 6 S.W.3d at 461; *Baxter*, 523 S.W.2d at 936.

A lawyer's assistance to his or her client is ineffective if the lawyer's conduct "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. This overall standard is comprised of two components: deficient performance by the petitioner's lawyer and actual prejudice to the defense caused by the deficient performance. *Id*. at 687; *Burns*, 6 S.W.3d at 461. To demonstrate prejudice, a petitioner must show "a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The petitioner bears the burden of establishing both of these components by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); *Burns*, 6 S.W.3d at 461. The petitioner's failure to prove either deficiency or prejudice is a sufficient basis upon which to deny relief on an ineffective assistance of counsel claim. *Burns*, 6 S.W.3d at 461; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996).

In evaluating a lawyer's performance, the reviewing court uses an objective standard of "reasonableness." *Strickland*, 466 U.S. at 688; *Burns*, 6 S.W.3d at 462. The reviewing court must be highly deferential to counsel's choices "and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462; *see also Strickland*, 466 U.S. at 689. The court should not use the benefit of hindsight to second-guess trial strategy or to criticize counsel's tactics*, see Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982), and counsel's alleged errors should be judged in light of all the facts and circumstances as of the time they were made, *see Strickland*, 466 U.S. at 690; *Hicks v. State*, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998).

A trial court's determination of an ineffective assistance of counsel claim presents a mixed question of law and fact on appeal. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). This court reviews the trial court's findings of fact with regard to the effectiveness of counsel under a de novo standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise. *Id.* "However, a trial court's *conclusions of law*—such as whether counsel's performance was deficient or whether that deficiency was prejudicial—are reviewed under a purely *de novo* standard, with no presumption of correctness given to the trial court's conclusions." *Id.* (emphasis in original).

Our review of the record in this case pursuant to the applicable law leads us to the inescapable conclusion that the post-conviction trial court was absolutely correct in its decision to deny Petitioner his request for post-conviction relief. Neither deficient performance, nor any credible proof of prejudice if there had been deficient performance, was proven by Petitioner to the post-conviction trial court. Accordingly, Petitioner is not entitled to relief in this appeal.

**CONCLUSION**

The judgment of the post-conviction trial court is affirmed.

_____
THOMAS T. WOODALL, JUDGE